UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES JONES,

        Plaintiff,

Case No. 1:11-cv-514

Hon. Robert J. Jonker

v.

UNKNOWN JENSEN, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Paul Jensen and Jeffrey Jameson (named in the complaint as "Jameason") (docket no. 11). Defendants' motion is unopposed.

**I.    Background**

The court previously summarized plaintiff's claims as follows:

> Plaintiff is incarcerated at Ionia Maximum Correctional Facility (ICF). He sues the following employees of the Michigan Department of Corrections: Officers (unknown) Jensen, (unknown) Jameason, (unknown) Wood, and (unknown) Lahner; Warden John Prelesnik; E. Huss and N. Norwood.
>
> According to the complaint, on May 2, 2010, Plaintiff was in his cell when Defendants Jensen, Jameason and other officers, took him to the "b-wing" shower. After Plaintiff was placed in the shower, Jensen began "assaulting" and "abusing" Plaintiff, kicking and hitting him. (Compl. at 3, docket #1, Page ID#3.) Jensen told Plaintiff that he "better be gone by (2 to 10) or (10 to 6) by the [n]ext [d]ay [b]ecause when they get back [Plaintiff] will get even more of [an] A-S-S kicking." (*Id.*) Plaintiff contends that Jensen "continually" puts inmates into handcuffs and assaults them. (*Id.*)
>
> Plaintiff also alleges that Defendant Wood puts her fingers in prisoners' food and will spit in food provided to prisoners. In particular, on March 30, 2011, at

> 10:00 am, Defendant Wood spit in Plaintiff's food tray while she was passing out the trays. Defendant Lahner, who was helping Wood distribute the trays, saw Wood's actions but did not stop her or report her conduct to other officials.
>
> Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks damages and a temporary restraining order against all Defendants "with an affidavit for any officials retaliating against . . . Plaintiff." (*Id.*) He also seeks an order discharging officers that assault prisoners or "misuse" prisoner food.

Opinion at p. 2 (July 19, 2011) (docket no. 6). The court construed plaintiff's complaint as alleging Eighth Amendment violations for the unnecessary and wanton infliction of pain. *Id.* at p. 6. Based on its review, the court dismissed plaintiff's claims against all defendants except for Jensen and Jameson. *Id.* at p. 7.

### II.    Defendant's motion for summary judgment

### A.    Legal Standard

Defendants have moved for summary judgment on various grounds, including failure to exhaust administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B.  Failure to exhaust

#### 1.  Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to

obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Defendants Jensen and Jameson are not the subject of a grievance

Defendants' undisputed evidence establishes that plaintiff has not exhausted any grievance through Step III.[1] Richard D. Russell, manager of the MDOC's Grievance Section, stated in his affidavit that he searched the grievance records pertaining to plaintiff. Russell Affidavit (docket no. 12-3). An "MDOC Prisoner Step III Grievance Report" attached to Russell's affidavit reflects that plaintiff, James Jones No. 707629, has not exhausted a grievance through Step III. Grievance Report (docket no. 12-3 at p. 6). The Grievance Report includes a statement by Mr. Russell that "No record of a Step III appeal was found for this prisoner for this period." *Id.* Based on this undisputed record, plaintiff has failed to properly exhaust a grievance against defendants Jenson and Jameson. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, defendants Jensen and Jameson are entitled to summary judgment with respect to plaintiff's complaint.

---

[1] As discussed, *supra*, plaintiff does not oppose defendants' motion for summary judgment.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Paul Jensen and Jeffrey Jameson (docket no. 11) be **GRANTED** and that this action be **DISMISSED**.


Dated: July 30, 2012            /s/ Hugh W. Brenneman, Jr.
                                HUGH W. BRENNEMAN, JR.
                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).